**In the Matter of Jack Lee WHITE, Bankrupt.**

**No. 46711.**

United States District Court
S. D. Ohio, W. D.

Oct. 30, 1967.

James R. Bridgeland, Jr., Taft, Stettinius & Hollister, Cincinnati, Ohio, for petitioner.

Milton E. Burchett, Cincinnati, Ohio, for trustee.

### MEMO AND ORDER

HOGAN, District Judge.

This matter is before the Court on a petition for review of an Order of the

Referee in Bankruptcy denying petitioner's Reclamation Petition to certain cash proceeds of the bankrupt's estate.

### The Facts

Jack L. White (hereinafter called "White") owned and operated a supermarket at Batavia, Clermont County, Ohio. His business was selling at retail groceries and other items typically found in a supermarket.

His primary supplier was Super Valu Stores, Inc. (hereinafter called "Super Valu"), the petitioner. While White bought the major part of his grocery inventory from Super Valu, he had other suppliers of various goods sold in his store.

Super Valu delivered groceries to White's store weekly. It was established practice that White would pay for the previous week's deliveries at the time he received a current week's shipment, though he missed some payments. This system resulted in a running account owing from White to Super Valu, the amount of which was the price of the current week's grocery shipment, plus payments he had missed in the past. Shipments averaged approximately $4,000 per week.

On or about November 8, 1965 (at which time White owed Super Valu in excess of $5,000.00—which was the minimum amount constantly owed up until bankruptcy) White signed and delivered to Super Valu a security agreement which gave Super Valu a security interest in all of White's inventories then owned or thereafter acquired and in the proceeds of those inventories. The agreement stated that it was given to secure indebtedness then owing or which might thereafter become owing. Financing statements were filed with the Clermont County, Ohio Recorder and the Ohio Secretary of State on November 8, 1965, and November 9, 1965, respectively.

On June 4, 1966, White stopped doing business. Two thousand thirty-six dollars and fifty-five cents ($2,036.55) was taken from his cash registers during the last few days he was open. This money was proceeds from the sale of inventory.[1] It was taken directly from the register drawers and turned over to White's attorney, who placed it in a separate account pending a determination of its proper disposition.

On August 10, 1966, White filed a petition in bankruptcy in this Court. He was adjudicated a bankrupt as of that date. The $2,036.55 referred to above was listed as an asset on the schedules he filed and was turned over to his trustee by his attorney.

On October 6, 1966, Super Valu filed a petition in the bankruptcy court seeking to reclaim this fund from the trustee. Super Valu's petition recited that White still owed $9,510.50 for goods sold. This amount represented the price of the last shipment made to White, which was approximately $4,000, plus the balance of previous payments White had missed.

The trustee resisted Super Valu's petition. After hearing, the referee held that while Super Valu had a perfected security interest under the Uniform Commercial Code, this security interest was avoidable by the trustee under Section 60a of the Bankruptcy Act. Super Valu then petitioned this Court for review.

### The Issue

The basic question involved in this case is an important one. It is whether the so-called "floating lien" permitted by the Uniform Commercial Code is invalid under Section 60a of the Bankruptcy Act. The Referee has held that the Code lien cannot be enforced in bankruptcy.

### Discussion

The problem of whether U.C.C. Section 9–108 (Ohio Rev. Code 1309.15, 1309.16, 1309.06) is in conflict with Section 60

---

1. At oral argument, counsel conceded a stipulation, before the Referee, that the cash was the "identifiable proceeds" of the "inventory" literally covered by the mortgage.

There is also no question that the mortgage, as filed, complied with all the technical requirements of law.

of the Bankruptcy Act has been dealt with pro and con in—

Pro (i. e., in conflict)

In Re Matter of Portland Newspaper C.C.H.—Installment Credit Guide #98483 (D. Oregon—Referee)

Journal of National Conference of Referees in Bankruptcy, July, 1967—"Some Areas of Conflict Between U.C.C. and Federal Bankruptcy Act" (an address by Dean Robert F. Boden of the Marquette University Law School)

Referee Gartner of this District, see Exhibit A attached, being an excerpt from his opinion.

*Contra*

In Re Portland Newspaper Publishing Co.—(U.S.D.C.—Oregon—reversing Referee 8/22/67—Chief Judge Solomon)—36 Law Week 2157

and

Rosenberg v. Rudnick, 262 F.Supp. 635, (D.Mass.1967, Judge Ford).

We have carefully considered the authorities cited above and the briefs of counsel. It would serve no useful purpose to repeat the reasons leading to the conflicting results. We do not assume to add any. Both District Judges concluded that "U.C.C. 9–108 does not permit the evil which Section 60 seeks to prevent." We agree, and therefore

ORDER

It is ordered that this cause be and it is remanded to the Referee with instructions to grant Super Valu's petition for reclamation.

EXHIBIT A

Revised Code 1309.06 by its very language, as has been pointed out, creates an artificial fiction by stating something which in the instant case simply is not true. It states in part: "Where a secured party makes an advance * * * to be secured in whole or in part by after acquired property * * * his security interest in the after-acquired collateral shall be deemed to be taken for new value

and not as security for an antecedent debt * * *". The Statute is an obvious attempt to evade the provisions of Section 60 of the Bankruptcy Act by "deeming" a situation which is in fact not real. In the instant proceedings the security agreement was made on November 8, 1965, which covered a then existing debt and new value. After that date the bankrupt and the Super Valu Stores, Inc. went on a weekly cash basis. No new credit was extended.

If the secured creditor be permitted in this case to take the cash found in the cash register and apply it against a debt that existed some seven or eight months prior, despite what it might be "deemed" to be under Revised Code 1309.06, it is in fact and truth the application of money toward the payment of an antecedent debt. No force of the English language can change this situation. Hence, with all the other elements of a voidable preferential transfer as Section 60(a) of the Bankruptcy Act provides being present as described by Judge Ford in Rosenberg v. Rudnick, 262 F.Supp. 635, 637, to-wit: He stated that the trustee must show that the debtor:

" * * * (1) made or suffered a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) while insolvent, and (5) within four months of bankruptcy or of the filing of the petition in bankruptcy, (6) the effect of which will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class; and in order to show that the preference is voidable must show that the transferee at the time of the transfer had reasonable cause to believe that the debtor was insolvent." Section 60(a) (2) reads:

" * * * a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract

could become superior to the rights of the transferee."

The trustee should prevail herein. Courts are not legislators. If the opposite result is to be achieved, the Bankruptcy Act should be amended.

Regardless of the desirability and the impact of inventory financing and the need to secure it as set forth by the proponents of the Uniform Commercial Code, the plain meaning of words and their applicability to factual situations must be respected if the law is to be intelligible, and it is for this reason that the Referee in the instant proceedings holds that the secured instrument as it attempts to attach to proceeds of inventory that come into existence within four months of bankruptcy, must yield to the plain provisions of the Bankruptcy Act.